Okay, our second argument of the morning is in Appeal Number 22-1393, among other case numbers. It's Nawara v. Cook County, Sheriff of Cook County. Mr. Linden, I believe we're going to begin with you. Yes, Judge. Okay, very well. Good morning, Your Honors. May it please the Court. I represent John Nawara. I'm giving part of my time to the U.S. Attorney. Yeah, as amicus, very well. Exactly. But this is cases about a correctional officer who was subjected to what the jury found after a two-week trial, unlawful fitness for duty, medical inquiry, and also an examination. For 311 days, our client was not allowed to work by the Cook County Sheriff. And a jury found, and it's not being appealed from the underlying verdict, that it was indeed a violation. Based on the party's stipulation, there's no doubt in this case that Mr. Nawara was prevented from working, did not receive a paycheck for 153 days. The amounts of back pay otherwise created by the judge saying that back pay is not available unless our client proved that he's disabled, which is contrary to the purpose of subsection D4, which the whole purpose of the statute is not to require an employer to inquire whether or not somebody's disabled. The legislative history, which we cite in a brief and the U.S. Attorney cites in their brief, makes it very clear that for years and years and years, employers used medical inquiries and examinations to determine whether or not a person is disabled. Let's say a person lost his hair, kind of like I've lost some hair too, and they suspect the person might have cancer. You cannot inquire whether or not that person has cancer and then turn around and discriminate. So the whole purpose of D4 is to prevent an employer from inquiring about the disability. By the lower court requiring Mr. Nawara to prove that he's disabled, it circumvents the very heart of D4 and the purpose of it. What precise evidence is there in this record that the fitness for duty examination was in fact being used for an improper purpose? The jury found it was. What happened, a person by the name of Burke, who's a senior member of the sheriff's office staff, reported an argument between Mr. Nawara and a superintendent of the jail. The jury asked Mr. Burke, who referred it, the very next day, they shifted Mr. Nawara to what they call ex-ops. In ex-ops, they gave him a gun. And the jury asked, why would you put him in a position where he carried a gun if you're concerned about the safety and welfare of the jail? And Mr. Burke said flat out to the jury, and it was a jury question, I had no fear that he was a danger to himself or a danger to others. And there was a whole lot of evidence, and that part of the verdict's not being appealed from. That's set in stone. The verdict itself is not under dispute. So getting back to the back pay, there's no dispute that my client lost over $30,000 in back pay. The Koch County Sheriff's Office says, well, never mind, it's only a technical violation. And that's really an affront to the ADA. I don't know how in the world there's no authority. The lower court judge never found it was, quote, a technical violation. In all franklihood, there's no such thing as a technical violation of the ADA. If you violate the ADA, you violate the ADA. This is not a case of no harm, no foul. My client lost over $30,000 in lost pay, plus for approximately six months, seven months, he had to use his personal and accumulated vacation time to get a paycheck for the other five months. And we lay out in our brief, and I think the U.S. Attorney did an excellent job in their brief laying out the statutory basis of the ADA and why the district court's opinion just doesn't hold water. And if you look at subsection A of the statute, or I'm sorry, D1, D1 says that subjecting employees to medical examinations and medical inquiries is a form of discrimination. The whole basis of lower court's decision where back pay was not allowed was the court's determination that it was not discrimination. Mr. Lillian, how does subsection B, how is that relevant to the statutory analysis in your view? I think subsection B, I'm trying to recall exactly what subsection B says. Well, B helps give some content to A. So A is the general rule, the general anti-discrimination prohibition, and then B says that the term discrimination, as it's used up in A, against a qualified individual includes, and then there's a whole litany of prohibited actions. I think in context it does support Mr. Navarro's claim for back pay. A refers specifically to medical examinations and medical inquiries, and that specifically addresses subsection D. And I think if you read that together with the purpose of the statute, that the purpose of the statute is to protect the disabled. I mean, this case not only affects Mr. Navarro, but it affects disabled people. It's going to require disabled people, if they want a chance at back pay, and the overwhelming cases are going to be monetary harm suffered by back pay. And if you're going to make them have to prove they're disabled, you're flying right in the face of the statute, and you're requiring them to disclose what the very purpose of the statute is designed to prevent. So I don't know if I appropriately answered your question, but, yeah. Mr. Linden, if I could ask you a question about 2000E-5G2A. Okay. And from my reading of the government's brief, they are recommending or suggesting that we read disability into that provision of the statute. That is, it says, you know, back pay, certain things are not available if an employment action was taken for any reason other than discrimination on account of race, color, religion, sex, or national origin. And the government's amicus proposes that we read disability into there, even though it doesn't appear. Now, I know that the language in that provision predated the enactment of the ADA, but in 1991, Congress revisited this provision, as well as implementing 2B after the Supreme Court's Price Waterhouse decision, and also in the Civil Rights Act of 1991, it made some amendments to the ADA. What, if anything, are we to make of the fact that Congress seemed to have had an opportunity to add disability into 2A, but didn't? I'm a little confused. I thought that was the sheriff's position, where the district court put disability into subsection 2000. I forgot. It's a difficult number to remember. But I think that it seems to me, though, that's what Mr. Noiro would also have to. If your argument is that requiring medical examinations is a form of disability, Yes. then the question is, how do you escape the language of 2A? 2A talks in the context, and the government might be better off answering this for you, but it really speaks with respect to Title VII. As your honors know, ADA does not have a separate enforcement or damage provision. For Title VII, each one of those race, sex, those are exhaustive, really, Title VII. Disability is nowhere to be found, if you look at it. The district court really put disability and added disability in, for an exception to Back Bay, which does not appear at all. I know my time's about up to give any government input. If your honors have any other questions, I'd be happy to try and answer them. Okay, very well. Thank you, Mr. Linden. We'll hear from Mr. Linden. Thank you. You're welcome. Good morning, your honors. May it please the court, Jonathan Backer for the United States Amicus. Judge Lee, let me pick up with your question. I think the key to understanding how the Title VII's Back Bay provision works into this framework is actually 12117A of Title I, which incorporates by reference all of Title VII's remedies and its private right of action for, quote, any person alleging discrimination on the basis of disability. Really, for anything to make sense from all the remedies and the private action in Title VII, disability sort of has to be imported into all of those provisions for the framework to make sense because disability doesn't appear anywhere in Title VII's provision. And I think that that's a point of common ground, frankly, with the county, that disability is read into all of Title VII's provisions. But I think there's something more that we can infer from that incorporation by reference because, again, it says it's only available to any person alleging discrimination on the basis of disability, and that's both the remedies, like Back Bay, and the private right of action. And this court, in Kurtzall's and Wright, and every other court of appeals that has addressed the issue, has held that subsection D of Title I protects people irrespective of disability status. So if I might interrupt. So I take it your answer to my question is Congress didn't feel like it needed to add disability to 2A because it previously, under 42 U.S.C. 12117A, already thought it did that. Correct, Your Honor. Yes. And so discrimination is used throughout Title I and related statutes, so both 12117A, also in the Rehabilitation Act. It incorporates Title I's protections only with respect to employment discrimination. But this court held in Strong v. Paulson that that incorporation includes subsection D. Same with the Civil Rights Act of 1991 that Your Honor mentioned. It makes compensatory and punitive damages available only in instances of intentional discrimination. But even the district court here acknowledged that compensatory and punitive damages must be available for violations of subsection D irrespective of disability status. So what the United States is asking the court to do here is just to sync up what it has already recognized in cases like Kurtzall's and Wright and Strong, that discrimination is a term of art, as used in Title I, that encompasses all violations of the statute, including subsection D. And that's true both with respect to private right of action, which is implicit in Kurtzall's and Wright, and it's true with respect to remedies, compensatory, punitive, and in this instance, back pay. There's just no way to split the atom and have discrimination mean something different in the remedies context than it clearly means with respect to whether there is a private right of action in the first place. So there's no doubt that there's some translation that's necessary to make Title VII's provisions make sense, as, Judge Lee, you were pointing out, because it doesn't mention disability, and it doesn't use discrimination in the same way that Title I does. But it's clear that Congress intended all the remedies and Title VII's private right of action to be available for enforcement of Title I's provisions, and subsection D is different from Title VII, in that it doesn't fall within the ordinary meaning of the term discrimination. But it's quite clear from subsection D.1, which says that medical exams and disability-related inquiries are presumptively discrimination. Yeah, it's that shall include language. It's basically Congress – I think what you're saying is it's basically Congress saying we, the U.S. Congress, are deeming a violation of the medical examination and inquiry provision. We're deeming it to fit within subsection A. Yes, Your Honor. That's exactly correct. Okay. Can you go to B? I just want to get the benefit of your expertise on B. Yeah, so one of the oddities about the case is you have the ADA, and you think the ADA is all about protecting those that are disabled. You have a non-disabled plaintiff here, so maybe there's a little bit of a disconnect. But I don't really think so, and I think B tells us that. There are provisions in B, for example, the association provision. If I'm an employee and I stick up at work for those that are disabled, and I unfortunately am disciplined for that, I'm protected there. Yes, exactly, Your Honor. Even though I'm not in my hypo, the one sticking up is not disabled. Yes, so I think that's a way that B and D – the preamble to B and subsection D1 are similar in that they both expand the term discrimination as used in the statute. I can get back pay. What's that? I can get back pay. Absolutely, absolutely. And so they work in tandem to expand the meaning of discrimination beyond the ordinary dictionary definition of the term. B6 could be read to do that too. Yes, and the reasonable accommodation provision of subsection B. Again, that doesn't fall within the ordinary meaning of discrimination, but it's clear that private right of action and remedies are available for violations of that provision. So we would ask that this court reverse the district court's back pay judgment and hold that violations of subsection D are a form of discrimination under the statute. Thank you. Thanks to you. Mr. Sachs, good morning. Good morning, Your Honor. May it please the court, at the outset I would like to respond to some of the answers to the appellants have given to those questions because I do not agree with them. First of all, with respect to Mr. Linden's claim that there was no evidence in the record of a technical violation, we didn't make that term up. We got the term technically violated from the district court's opinion, docket number 373 at page 8. When I wrote technical violation, I simply meant unintentional violation or nondiscriminatory violation, and this was a textbook example of unintentional violation without discriminatory intent. Secondly, there is no evidence in the record that this fitness for duty exam was used for an improper purpose. That is really the point of the argument here. You can't have strict liability for a violation of subsection D-4 without something more, without one of those things under subsection D, and I think Your Honor, Judge Scudder got it right. Yes, there are things that Congress has defined as discrimination on the basis of disability in subsection D. Here's the concern I have with your position. Let me give you a hypothetical. Let's suppose that the plaintiff here is standing shoulder to shoulder with somebody named John Doe, and they're both approached by a supervisor and asked to submit to the fitness for duty exam, and they both say why, and the answer to Mr. Noir is, well, we're concerned with your anger issues. We want to make sure that you're fit, and in response to Mr. Doe, they say, we're concerned that you may suffer from mental illness, and in particular, bipolar disorder, and if that's true, we really can't have you working here. Right, that would be a subsection B violation, Your Honor, but that was not what the jury was asking for. It's not a D-4 violation in my hypothetical? No, the D-4 violation is simply, regardless of intent, an examination that was not job-related or consistent with business necessity. So assume in my hypothetical there's no business need to know this. There's no job-related reason. They just say, we want to make sure that you don't have an anger issue, plaintiff, and Mr. Doe, we want to make sure that you don't have bipolar disorder because we don't want people working here like that. Right, well, then there's an intentional target of bipolar disorder. That's not what's on the record here. Okay, in that hypothetical, where they're standing shoulder to shoulder next to each other, could John Doe both, one, receive a liability award, and two, receive back pay? Well, there's two things. One, the liability would be under both B and B. Forget B. My hypothetical is about D-4 and back pay. Under D, yes. Well, then there would be a perception that someone was disabled and a target of someone who was disabled. It's just distinguishable from what we have here. Okay, and so the people that are standing shoulder to shoulder next to each other in that hypothetical, they would both establish D-4 violations. One could get back pay. One couldn't. Well, one is standing up for someone who was targeted on the basis of disability. So that would be, I think, as Your Honor pointed out, B, and I know Your Honor wants to forget B. B has a specific provision for that. The issue I'm having, and I think the court has noticed, there is something of a disconnect between A, B, and D, but I think they can all be reconciled in this way. A has a general rule that no covered entity shall discriminate against a qualified individual on the basis of disability. And then it lists a series of things, and then it goes to, and other terms, conditions, or privileges of employment. What D-1 does is it says other terms, conditions, and privileges of employment shall include medical examinations and inquiries. It doesn't say all medical examinations or inquiries are acts of intentional discrimination on the basis of disability. And Congress, had they intended to make that the case, would have put that there. They did not. Instead, there's a list of things under subsection B that you have to have to get to the point of discriminating against a qualified individual on the basis of disability. It's a very specific list. There was no finding made below on that list. The case below wasn't presented under the list of things under subsection B. Your Honor used, for example, subsection 6, screening out or tending to screen out a disability. Well, that wasn't presented below either. It was just Officer Navarro objected to signing the form. He didn't like that there was a HIPAA noncompliance that he felt. And then once the form was adjusted, he sat and took the fitness for duty exam, and he passed it. There's no evidence that he was disabled or perceived as disabled. And the jury wasn't asked to make a finding that he was disabled or perceived as disabled. He was simply objecting to something for himself, not on behalf of a disabled person who was actually targeted or whom he was sitting shoulder to shoulder with. So that's how I would distinguish our facts from Your Honor's hypothetical. So is that to say that a D4 violation, you have to be able to map it, in your view, over to B and to one of the subparagraphs in B? Yes. And if you cannot do that, there can be no liability, let alone back pay? Not no liability, Your Honor. There cannot be back pay liability. The reason is back pay liability stems from Title VII's enforcement provisions, and Congress spoke very clearly on that, and I think the government acknowledged that there is a mismatch between Title VII and the ADA. Subsection G1 of Title VII ties the back pay damages explicitly to the employer's intent. Congress used the word intentionally twice in Subsection G1. It spoke clearly. It used the word twice for emphasis. And Subsection G2A hits the point home. There's no back pay for suspension for any reason other than discrimination. So if you have the definition of discrimination on the basis of disability in ADA Title I, Sub B, you have to fit into that to get your back pay under Subsection G2A of Title VII. And, of course, the Americans with Disabilities Act incorporates Title VII's enforcement provisions. I would also add that this form of discrimination claim, if allowed, and we don't see any other circuit courts of appeals who have gone this far, would undo McDonnell-Douglas to some degree. I know the plaintiff claims we waive that. It was actually front and center in the district court briefing. The plaintiff was wrong. District Court Docket Number 360 at pages 1 and 2 is where we argue that back pay would be inconsistent with McDonnell-Douglas because it would make unwitting violations of Subjection D4, strict liability, different than any other type of discrimination claim. The employer can't plead a nondiscriminatory motive in asking for a fitness exam as long as the plaintiff just hits that one bar under D4, that it's not a business necessity, regardless of intent, a completely innocent violation like the one you had here where they just asked somebody to take a standard fitness exam after an instance with detainees. So it doesn't really make sense to have a lower trial burden of proof and no McDonnell-Douglas burden shifting for plaintiffs who aren't actually disabled or perceived as disabled. That cannot be what Congress intended when they passed the ADA, and it doesn't appear to be what this court intended in the Kurtzals decision, which is the last decision the court rendered under D4. The court did recognize that you could have nondisabled people file claims in Kurtzals under D4. It didn't say that they get back pay, and there really is no case. This is one of first impression about whether you have this strict requirement of back pay for a D4 violation absent proof of any of those things under subsection B. Again, this wasn't presented to the jury as a subsection B claim. It was presented to the jury as a subsection D4 claim without any of the other proofs of discriminatory intent, and that's the problem here. You would invite really a rule that lowers the bar in discrimination claims to unintentional violations that would encourage people not to take fitness exams, including even in jobs like this where the public safety is at issue, because they object to signing a form and they claim it's not a business necessity, and if they win, then they get a presumption of back pay. That cannot be what Congress intended, and had Congress intended otherwise, it would have said so somewhere. On the legislative history point, there's nothing in the legislative history of subsection D that speaks to what Congress intended at all with respect to incumbent employees like Officer Navarro. The legislative history shows that Congress was concerned about making prospective hires reveal their disabilities to get hired. There's nothing that says there was an intent to give back pay to people without an actual or perceived disability. And Your Honor's point about no relief, this plaintiff sought injunctive relief. He actually did, although we've cross-appealed it, get some non-monetary relief in the form of an order to restore his seniority levels, and we certainly did not contest the right to emotional distress damages. It just so happened that the jury zeroed him out on emotional distress damages. The issue is the statutory relief of back pay should not be presumptive without proof of an intent to target someone's disability, and that's what you had here. You had no intent to target Officer Navarro's disability. He, in fact, is still there. He's in a different department. The concerns that the supervisors had about him were anger management. It was concern about his ability to manage a detainee population without losing his temper. There was no jury instruction presented on whether Officer Navarro was perceived as disabled simply because he was perceived as having a temper, and anger by itself does not rise to the level of a perceived disability. There's a long line of cases in our brief. Pavlicek and Kurtzels himself and numerous other decisions of this court say that anger by itself is not a perceived disability. So, again, I would urge that you're accepting the jury. You're not challenging the jury's verdict. You're accepting the liability determination under D-4, the violation of D-4. Correct. We're just saying there's not presumptive back pay here, and we think the district court landed on the right result when it held there's not presumptive back pay here and correctly balanced the equities by not awarding back pay here. District courts are given discretion to balance equities when considered back pay under Title VII. That discretion is somewhat limited by Albemarle paper, but it's not absolutely limited, and there was no abuse of that discretion here, especially, especially, Your Honor, given that he had transferred out of the Department of Corrections, so there was no seniority level to restore, and given that he was zeroed out on emotional distress damages because the heart of his claim really at trial, it's now flipped to a back pay claim because he lost it. The heart of his claim at trial is that he experienced severe emotional distress from going through this process. There were other reasons the equities do not favor back pay here. I mean, this is a difficult law enforcement job. We do not want a chilling effect on employers who need to oftentimes, this wasn't one of the times according to the jury, require fitness exams for people to do their job. You don't want to embolden officers to not take fitness exams and not come to work because once the motivating factor stops mattering, if you don't have to prove those things under Subsection B, you only have to prove the absence of job necessity. So this will create a burden that falls hard on government employers, trucking companies, drivers, anything that involves using your body in some way. And, again, Congress did not expressly intend for massive liability for these kind of non-intentional acts. They would have spelled it out explicitly had they done so. Mr. Sachs, with regard to the determination or the wording of seniority, it's not quite clear to me from the record what impact, if anything, seniority in the Sheriff's Department as a correctional officer would impact his current position in the Police Department. Is there any sort of cross-reference, like, for example, in the CBA or whatnot, where he would receive someone with more seniority in the Sheriff's Department would receive some sort of benefit in the position in the Police Department? Yeah. Your Honor, I believe we cited the fact, the record cites for the fact, that he changed unions and he changed jobs. We may have cited the CBAs. We for sure cited his testimony that he changed unions. And once that happens, you're on a different clock. You're on a different scale. You're no longer a member of the International Brotherhood of Teamsters, which is what the Department of Corrections has. You're a member of the Fraternal Order of Police. So the seniority scale starts over. The order restoring seniority then ended up being an improper advisory opinion with no actual impact, and thus the court should not have gone there. It's the one aspect we are cross-appealing. And I'm glad Your Honor did ask about the cross-appeal. But the sole thing we are cross-appealing is this improper advisory opinion in talking about a job he no longer has and limiting it to non-monetary relief of a job he no longer has. If he were trying to get back into the Department of Corrections, which he isn't, it may have some impact. But he's moved on. He's in the Sheriff's Police. It's a different location, different office, different union. So I see my time is close to expiring. I just want to move back from the cross-appeal to the notion of Chevron deference. That was all over the Plano's reply brief. And first of all, I do not think that should apply here because this is not an ambiguous statute, so it should not be rewritten at the government's interpretation. The government is trying to read subsection B out of it. And also, the concept of Chevron deference is before the Supreme Court now, as I'm sure Your Honors saw. I don't know if they're revisiting it or not. But if they don't, the plaintiff's cases are distinguishable because this is not an ambiguous statute, nor does it particularly impact agency expertise. It's not like the agency is deciding what it means to terminate an agency proceeding where you would defer to them. So with that, Your Honors, I see my time is running. Does anyone have any questions or should I wrap up? Okay, very well. Thank you, Mr. Sachs. Thank you, Your Honor. Mr. Linden, we'll give you a little more than eight seconds. We'll give you a couple minutes. Thank you, Your Honors. You may not need it. Thank you for your time. I think an important point here is one of the primary, I think the courts say, the court is duty-bound to render an ADA decree that's going to not only address the discrimination that occurred before it, but also future discrimination. Here, I mean, part of the problem is employers now, if this decision stands, are going to have little incentive not to subject its employees to unlawful fitness for duty and medical inquiries. There has to be teeth to defore. It makes no fundamental sense. Mr. Sachs got up here and said, well, Mr. Navarro could have gotten injunctive relief, and that's a form of equitable relief. As Your Honors know, back pay is a form of equitable relief. It makes no common sense to allow injunctive relief, but at the same time prohibit equitable measure of back pay. And this court has long held that ADA, successful ADA plaintiffs, are presumptively entitled back pay. Here, Mr. Navarro proved back pay was a but-for cause for the sheriff not allowing them to work. District Court made that determination. There's just no reason and no common-sense basis to depart from common sense in the presumptive plaintiff in the ADA case being entitled back pay. And there's a reason no other circuit court has ever accepted the sheriff's position. There's been no circuit court that's held that back pay is not available under D-4. We cite in our brief and the U.S. Attorney's cites in its brief the Bates decision and the Garrison decision out of the Tenth Circuit. Both those cases stand for the proposition. Number one, Bates says you get compensatory damages or allowed for a D-4 violation. Same thing with Garrison. There is no authority that the District Court relied upon other than the Joy Green case, which was complete dicta that it used. And that was a case where they couldn't prove damages at all. I see my time's up, and if Your Honors have any questions, I'll be happy to answer them. Okay, Mr. Linden, thanks to you. Mr. Sachs, thanks to you. And Mr. Backer, a special thanks to the Justice Department for participating as a friend of the court. We appreciate it very much. We'll take a five-minute recess and then continue with this morning's arguments.